J-S19011-20

2020 PA Super 247

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SAEED RASHEED JOHNSON | : | |
| | : | |
| Appellant | : | No. 1313 EDA 2019 |

Appeal from the Judgment of Sentence Entered April 1, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0004742-2018

BEFORE:  BOWES, J., McCAFFERY, J., and MUSMANNO, J.

OPINION BY BOWES, J.:                                    **FILED OCTOBER 09, 2020**

Saeed Rasheed Johnson appeals from the aggregate judgment of
sentence of ten to twenty years of imprisonment imposed after he was
convicted of robbery and possessing an instrument of crime ("PIC").  Although
we affirm Appellant's convictions, we are constrained to vacate Appellant's
judgment of sentence and remand for resentencing.

The trial court summarized the factual history as follows:

> On July 15, 2018[,] Jorge Rosas was working the [7:00]
> p.m. to 7:00 a.m. shift as a cashier at the Sunoco A-Plus store on
> West 9th Street in Chester.  At about 7:45 p.m. a customer
> approached the cashier's counter with a bag of chips.  Mr. Rosas
> asked for twenty-five cents for the chips and the man dropped the
> money to the floor and "pulled" a gun.  Mr. Rosas warned him not
> to "play" unless he wanted to go to jail and advised him that there
> were cameras in the store.  The man left the store with the chips
> and Mr. Rosas followed him demanding payment.  The man re-
> entered the store, put the chips back on the counter, told Mr.
> Rosas that he "made a mistake," he didn't want the chips and he
> left.
> Mr. Rosas did not call the police but the next morning when
> his manager, Annis Kahn, came in he reported the robbery to him.

The two men viewed the security camera video that captured the robbery and went back to work. Later in the day, at about 7:00 p.m. as they were working the man who committed the robbery entered the store. The man came into the store, grabbed a soda, made eye-contact with Mr. Kahn, left the soda on the counter and left the store. Mr. Kahn recognized him as the same man who was in the video that the men viewed earlier. After the man left the store[,] Mr. Kahn and Mr. Rosas viewed the video from the previous minutes and Mr. Rosas confirmed that it was the person who had robbed him. Mr. Kahn called the police.

Within five or ten minutes Officer Joshua Mann of the Chester Police Department arrived at the A-Plus. Officer Mann viewed the video of the man who just left the store, noted what he was wearing and sent out a "flash" including a description of the individual and what he was wearing. Officer Mann then left the store to search the neighborhood himself. Within fifteen minutes of leaving the store, about four city blocks away, he came upon [Appellant]. Officer Mann recognized [Appellant's] clothing and his face as the same as the man he saw in the video. Officer Mann detained [Appellant] and Mr. Rosas and Mr. Kahn were separately transported to the scene of the stop. Each man identified [Appellant].

Trial Court Opinion, 8/20/19, at 3-4.

Appellant was arrested and charged with the aforementioned crimes. Appellant proceeded to a jury trial, and on February 12, 2019, he was convicted of both charges. On April 1, 2019, Appellant was sentenced to a mandatory minimum term of ten to twenty years of imprisonment for the robbery conviction, after the trial court determined it was a "second strike offense." *See* 42 Pa.C.S. § 9714. A New Jersey aggravated assault conviction was the predicate offense. A concurrent term of six to twelve months of incarceration was imposed for the PIC conviction. Appellant did not file a post-sentence motion, but did file a timely notice of appeal and court-ordered

- 2 -

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court thereafter authored its Rule 1925(a) opinion.

Appellant presents the following issues, which we have reordered for ease of disposition:

1. Whether the trial court erred when it abused its discretion by limiting cross-examination of Commonwealth eyewitness Jorge Rosas? The trial court did not allow Appellant to impeach Rosas'[s] testimony that he'd never encountered a like situation before. Defense counsel was prepared to introduce that Rosas was working at the same store when the store owner was killed in 2011, and that Rosas was present in the store when there was shooting in the store parking lot in 2012.

2. Whether the trial court erred when it abused its discretion by allowing the Commonwealth to operate a video replay requested by the jury several times? The Commonwealth's attorney stopped and restarted the video on commands from the jurors.

3. Whether the ten to twenty year sentence on robbery is illegal because the underlying New Jersey statute defines aggravated assault as attempting or causing significant bodily injury whereas the Pennsylvania statute calls for serious bodily injury?

Appellant's brief at 7 (unnecessary capitalization omitted).

In his first issue, Appellant contends that the trial court improperly limited his cross-examination of Mr. Rosas, the victim and eyewitness to Appellant's robbery of the convenience store. The trial court has broad discretion regarding "both the scope and permissible limits of cross-examination." **Commonwealth v. Briggs**, 12 A.3d 291, 335 (Pa. 2011); **see also Commonwealth v. Rosser**, 135 A.3d 1077, 1088 (Pa.Super. 2016) (*en*

*banc*) (explaining that the trial court may place reasonable limits on defense counsel's cross-examination of a prosecution witness in order to avoid harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant.) Accordingly, we will not reverse the trial court's judgment in setting cross-examination limits absent a "clear abuse of that discretion, or an error of law." ***Id***.

Mr. Rosas testified that he did not immediately call the police after the incident because "for the moment, I a little scared. I tell you the truth. I get a little nervous. Nobody put a gun to me like this." N.T. Jury Trial, 2/12/19, at 50-51. The Commonwealth then asked whether Mr. Rosas had "ever encountered that situation before," to which Mr. Rosas replied he had not. ***Id***. at 52-53. On cross-examination trial counsel sought to counter Mr. Rosas's testimony with evidence that he had previously witnessed two shootings while working at the store. ***Id***. at 76-80. Mr. Rosas conceded that, in 2011, he was present when Mr. Muhammad Fareed was shot and killed in the parking lot of the convenience store. ***Id***. Trial counsel attempted to ascertain whether Mr. Rosas was inside or outside of the store at the time of the 2011 incident. ***Id***. Eventually, the Commonwealth objected, arguing that the line of questioning had gone beyond the scope of the direct examination. ***Id***. at 77. The objection, prompted the following discussion between the court, trial counsel, the Commonwealth, and Mr. Rosas:

> THE COURT:　　　　Where are you going with this, counsel?

| | |
|---|---|
| TRIAL COUNSEL: | He says this situation has never happened before. |
| MR. ROSAS: | No. |
| THE COURT: | Well, the situation – |
| MR. ROSAS: | To me. |
| THE COURT: | Where he personally got robbed. You're talking about something different. |
| MR. ROSAS: | Yes, that's something different, yeah. |
| THE COURT: | Where somebody else was shot and killed apparently - - |
| COMMONWEALTH: | And he's asking - - |
| TRIAL COUNSEL: | But he was - - |
| COMMONWEALTH: | - a question about what the police said at the time about the shooting. |
| TRIAL COUNSEL: | -- present at – during a time that the owner of the store was killed. |
| THE COURT: | Okay. You made that point. He said he was. |

*Id*. at 77-78.

Next, trial counsel asked about a 2012 shooting in the convenience store parking lot. *Id*. at 78. However, the Commonwealth repeated its objection. *Id*. At side-bar, the trial court again stated that trial counsel had "made his point" and limited the scope of trial counsel's remaining cross-examination to questions regarding whether Rosas himself, had ever been the victim of a robbery before. *Id*. at 78-80. After the side-bar, trial counsel concluded this

- 5 -

line of questioning, asking Mr. Rosas if he had ever been personally involved in a robbery at the store. *Id*. at 80. Mr. Rosas responded that he had not. *Id*. at 80-81.

On appeal, Appellant alleges that the trial court erred when it restricted the scope of his cross-examination because, by doing so, it improperly allowed Mr. Rosas's credibility to go "untested." Appellant's brief at 15. The trial court disagreed. In its Rule 1925(a) opinion the trial court gave a more detailed explanation for its ruling, as follows:

> This line of questioning was marginally relevant. Trial counsel sought to elicit testimony that demonstrated only that six or seven years earlier Mr. Rosas had witnessed two events where other individuals were shot outside the store. Those incidents had no connection to any material fact in this case. Evidence concerning these prior shootings would have been collateral to the issues at hand and would not have served to impeach Mr. Rosas's testimony. He freely admitted that he was in the store in [2011] when Mr. Fareed was killed outside and then testified he had never been the victim or target of a robbery at the store. [Appellant] suffered no prejudice by the limitation imposed on this line of questions.

Trial Court Opinion, 8/20/19, at 7 (citation omitted).

We find that the trial court properly exercised its discretion in denying Appellant's challenge to this evidentiary ruling. Mr. Rosas testified that he had never personally been the victim of a robbery at gunpoint, not that he had never witnessed a violent crime. To the extent that this distinction was unclear, Mr. Rosas clarified it on cross-examination and the jury was made aware that Mr. Rosas had witnessed a murder before. Therefore, further questions regarding what violent crimes Mr. Rosas had witnessed were not

relevant to his credibility and would have been cumulative of the testimony already elicited. Accordingly, no relief is due.

Next, Appellant alleges that the trial court erred when it responded to a jury question by replaying surveillance footage of the robbery for the jury. **See** Appellant's brief at 15-16. The decision to allow the jury to refresh their recollection by re-watching a video shown to them at trial is a matter within the discretion of the trial court. **Commonwealth v. Antidormi**, 84 A.3d 736, 755 (Pa.Super. 2014). Accordingly, we review such decisions for an abuse of discretion. **Id**.

While the trial court possesses great discretion when contemplating which exhibits to allow the jury to review, its discretion is not absolute. **See** Pa.R.Crim.P. 646. Rule 646 prohibits juries from utilizing certain enumerated categories of exhibits during their deliberations, as follows:

> (A) Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C).
>
> . . . .
>
> (C) During deliberations, the jury shall not be permitted to have:
>
> > (1) a transcript of any trial testimony;
> >
> > (2) a copy of any written or otherwise recorded confession by the defendant;
> >
> > (3) a copy of the information or indictment; and
> >
> > (4) except as provided in paragraph (B), written jury instructions.

Pa.R.Crim.P. 646(A), (C). Importantly,

> The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury. If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless.

***Commonwealth v. Barnett***, 50 A.3d 176, 194 (Pa.Super. 2012). Therefore, should we find that the trial court erred, such error does not constitute prejudice *per se*. ***See Commonwealth v. Williams***, 959 A.2d 1272, 1285–86 (Pa.Super. 2008). "[T]his inquiry requires us to determine whether providing the [evidence] to the jury was prejudicial: 'If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless.' " ***Id***. at 1285–86 (quoting ***Commonwealth v. Dupre***, 866 A.2d 1089, 1103 (Pa.Super. 2005)).

At trial, the jury was shown the surveillance footage three times, during the testimony of Officer Mann, Mr. Kahn, and Appellant's testimony. ***See*** N.T. Jury Trial, 2/11/19, at 59-61; N.T. Jury Trial, 2/12/19, at 21, 114-19. During Appellant's testimony, the video was paused in multiple places while Appellant highlighted differences he perceived between himself and the person in the video. N.T. Jury Trial, 2/12/19, at 114-19. During deliberations, the jury asked to review surveillance footage of the robbery "up close," and to be able to "freeze frame it at certain points." N.T. Jury Trial, 2/12/19, at 176. When the trial court asked for clarification as to where the jury wished to "freeze frame," one juror responded "where it was paused earlier." ***Id***. at 179. The

trial court agreed to allow the jury to review the video in its entirety, but in open court and with both sides present. *Id*. at 178.

In open court, the Commonwealth operated the video footage. When it was apparent to the trial court that the jurors were having difficulty viewing the screen, the projector was moved closer to the group. *Id*. at 179-81. The trial court then instructed the jury foreman to signal when the points were reached in the video where they wished to "freeze frame." *Id*. Also before the playback began, the trial court instructed the jurors to not make any comments or engage in any deliberations until they returned to the deliberation room. *Id*. at 183-84. The Commonwealth stopped the video twice based on the jury foreman's signal. *Id*. at 179-90. Appellant objected to the entire procedure, citing Pa.R.Crim.P. 646 and arguing that by replaying the video the court was improperly assisting the Commonwealth with its burden of proof. *Id*. at 177.

In explaining the reasons it permitted the jury to view the video in open court, the trial court relevantly indicated the following:

> The prosecutor presented the video and stopped it only at the direction of the jury foreman. Identification was a material issue in this case and after seeing the video three times in open court it asked to review pertinent portions from a closer vantage point and with two frames "frozen" as they were, without objection, during trial.
>
> In *Commonwealth v. Antidormi*, 84 A.3d 736, 755 (Pa.Super. 2014)[,] the Superior Court considered whether a replay of an audio recording of prior testimony to a jury in the midst of deliberations resulted in prejudice to the defendant. The [c]ourt concluded that the mere replay of previous testimony in

open court falls within the ambit of the trial court's discretion and where the defendant does not demonstrate prejudice no relief is warranted. Notably, as in the case *sub judice* the jury "did not hear new or different testimony in private, out of the presence of [appellant]. Instead, the jury merely heard a verbatim recording of exactly what transpired in open court . . . . As such, the jury did not hear any accusations or testimony that did not take place in open court – and [appellant] was not accused of anything in secret." Similarly, in this case the jurors re-viewed the video-tape in open court having viewed it three times during the evidentiary portion of the trial. The jury asked that the frame be "frozen" twice. This followed [Appellant's] narration of the video where he stopped and started the video to show *inter alia*, differences that he suggested existed between the tattoos that were displayed on the individual in the video and his own. Under these circumstances no prejudice existed. The jury saw a verbatim repeat of the video as it was presented by [Appellant] at trial. Accordingly, this claim has no merit.

Trial Court Opinion, 8/20/19, at 8-9.

We discern no abuse of discretion in the well-reasoned explanation of the trial court as to why it did not violate Pa.R.Crim.P. 646. Even assuming, *arguendo*, that the trial court's treatment of the video replay did violate the Pennsylvania Rules of Criminal Procedure, Appellant's scant analysis does not suffice to establish prejudice. In his brief, Appellant baldly asserts that he suffered prejudice without any development of his assertion. **See** Appellant's brief at 16. Accordingly, Appellant's claim challenging the replay of the surveillance footage fails.

In his final issue, Appellant alleges that the trial court erred when it imposed a "second strike" minimum sentence. Appellant's brief at 12-13. A challenge to the application of a mandatory minimum sentence is a pure question of law impacting the legality of the sentence. **See Commonwealth**

*v. Shiffler*, 879 A.2d 185, 188–89 (Pa. 2005). Thus, we will consider it *de novo*, despite the fact that Appellant failed to preserve this issue below. *Commonwealth v. Shaw*, 744 A.2d 739, 742 (Pa. 2000).

> Pursuant to section 9714(a)(1),
>
> Any person who is convicted in any court of the Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement. . . .

42 Pa.C.S. § 9714(a)(1). Section 9714(g) lists the crimes that qualify as "crimes of violence" under § 9714(a)(1), including, in relevant part:

> As used in this section, the term "crime of violence" means . . . aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2) (relating to aggravated assault), . . . or an equivalent crime in another jurisdiction.

42 Pa.C.S. § 9714(g).

In order to determine whether a foreign offense qualifies as a prior "crime of violence" under § 9714, we consider "the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability." *Commonwealth v. Northrip*, 985 A.2d 734, 740 (Pa. 2009) (quoting *Commonwealth v. Shaw*, 744 A.2d 739, 743 (Pa. 2000) (internal quotation marks omitted)). "The focus is not on the facts underlying the conviction, but rather on the statute that triggered the conviction." *Id*. at 741. Additionally, underlying public policy behind the two criminal statutes is relevant to our analysis, though not controlling. *Commonwealth v. Ward*, 856 A.2d 1273, 1277 (Pa.Super. 2004).

- 11 -

Importantly, "the offenses do not identically have to mirror each other, but must be substantially equivalent to invoke operation of 42 Pa.C.S. § 9714." *Id*.

In 2010, Appellant was convicted of third-degree aggravated assault in New Jersey. New Jersey defines third-degree aggravated assault as when a person: "Attempts to cause **significant bodily injury** to another or causes **significant bodily injury** purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury." N.J.S.A. 2C:12-1(b)(7) (emphases added). The New Jersey Code of Criminal Justice defines "significant bodily injury" as: "bodily injury which creates a temporary loss of function of any bodily member or organ or temporary loss of any one of the five senses. N.J.S.A. 2C:11-1.

Pursuant to § 9714(g), aggravated assault constitutes a "crime of violence" under Pennsylvania law if a person:

> (1) attempts to cause **serious bodily injury** to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
>
> (2) attempts to cause or intentionally, knowingly or recklessly causes **serious bodily injury** to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty;

18 Pa.C.S. § 2702(a)(1)-(2) (emphases added). The Pennsylvania crimes code defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement,

- 12 -

or protracted loss or impairment of the function of any bodily member or organ."  18 Pa.C.S. § 2301.

Appellant contends that his prior conviction for aggravated assault does not qualify as "crime of violence" because the New Jersey aggravated assault elements "contemplate a less serious crime than the Pennsylvania aggravated assault statute" sections that satisfy § 9714.  Appellant's brief at 13. Therefore, the trial court erred when it imposed the "second strike" mandatory minimum.  *Id*.  Since the elements of the two crimes are not the same, we are constrained to agree.[1]

A review of § 9714 reveals that the Pennsylvania legislature carefully crafted the definition section of a crime of violence so that its reach would be targeted and specific.  Specifically, § 9714(g) lists single subsections of particular crimes, most of which are first-degree felonies.  For example, with aggravated assault, the legislature chose to include only two of the seven subsections.  The remaining five subsections were excluded.  This deliberate distinction makes it clear that the legislature intended to directly limit this statute's application to only the most serious aggravated assault crimes, those

_____

[1] ***Accord United States v. Martinez-Florez***, 720 F.3d 293, 295-96 (5th Cir. 2016) (Finding that third degree aggravated assault in New Jersey is not a 'crime of violence,' warranting a federal sentencing enhancement.  In doing so the court reasoned that the third degree assault's "significant bodily injury" element did not fit within the model penal code definition of aggravated assault, which requires a higher showing of "serious bodily injury.").

which require the Commonwealth to show that the actor either attempted to cause, or did cause, "serious bodily injury." 42 Pa.C.S. § 9714(g).

In contrast, Appellant's New Jersey aggravated assault statute plainly proscribes a lesser degree of bodily injury than the qualifying Pennsylvania crimes. Specifically, a "significant bodily injury" targets temporary losses of bodily function, whereas a "serious bodily injury" pertains to permanent or protracted losses of bodily function. *See* N.J.S.A. § 2C: 12-1(b)(7). Notably, the New Jersey legislature enacted § (b)(7) in response to a concern that assaults involving injury more severe than a simple assault, but not rising to the level of serious bodily injury, were not being punished appropriately. *See State v. James*, 777 A.2d 1035, 1037 (N.J. Super. 2001). Accordingly, the New Jersey legislature intended for § (b)(7) to encompass intermediate levels of assault, bridging the gap between simple assault and aggravated assault. *Id*. (citing to Assembly Judiciary, Law and Public Safety Committee, "Statement to Senate, No. 504 [L.1995, c. 307, § 2] (April 12, 1995)).

Since we find that Appellant's 2010 New Jersey aggravated assault conviction was not a "crime of violence" as defined in Pennsylvania, he did not qualify for an enhanced sentence under § 9714. Accordingly, we must vacate Appellant's sentence and remand for resentencing. However, we do not disturb Appellant's underlying convictions.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/9/20</u>