J-A02020-23
J-A02030-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ELLIOTT MORRISON CRENSHAW, JR. | : | |
| | : | |
| Appellant | : | No. 49 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 8, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0002820-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KEVIN RAY MCBRIDE | : | |
| | : | |
| Appellant | : | No. 46 WDA 2022 |

Appeal from the Judgment of Sentence Entered December 8, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008685-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| KEVIN RAY MCBRIDE | : | |
| | : | |
| Appellant | : | No. 50 WDA 2022 |

J-A02020-23
J-A02030-23

Appeal from the Judgment of Sentence Entered December 8, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007367-2020

BEFORE:   BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED:  June 20, 2023**

These unrelated appeals by Elliott Morrison Crenshaw, Jr., and Kevin Ray McBride (collectively "Appellants") present the same legal issue:  whether the North Carolina statute proscribing taking indecent liberties with children is sufficiently similar to a registration-triggering Pennsylvania statute to have required Appellants to comply with the provisions of Subchapter I of Pennsylvania's Sexual Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.51-9799.75,[1] such that they were properly convicted for failing to do so pursuant to 18 Pa.C.S. § 4915.2(1)(a).[2]  Following careful review of the implicated statutes, we agree that the offense is similar to offenses enumerated in Subchapter I and therefore affirm.

## I.    Facts and Procedural History

We glean the relevant factual and procedural history of these cases from the certified records, in particular from the affidavits of probable cause and

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1] For the sake of brevity, in discussing statutes within Subchapter I, we hereafter omit the initial "9799." and reference only the number that follows the decimal point.  For example, rather than repeatedly stating "§ 9799.55" and "§ 9799.56," we shall refer to "§ 55" and "§ 56."

[2] Both Crenshaw and McBride were tried by the same judge.

- 2 -

Megan's Law packets compiled by the respective law enforcement agencies in the underlying cases.[3]

### A. Crenshaw

Crenshaw committed the offense of taking indecent liberties with children in North Carolina on July 30, 1993. ***See*** N.C.G.S. § 14-202.1(a) (enumerating a variety of conduct that is prohibited with children under the age of sixteen if the perpetrator is at least five years older than the child, as we discuss more fully *infra*). He was sentenced in September 1994 to three to ten years of imprisonment.[4] ***See*** N.T. Trial (Crenshaw), 12/8/21, at 7 (Commonwealth Exhibit 2). Upon release in September 2002, Crenshaw became subject to North Carolina's thirty-year sexual offender registration requirement. ***See*** N.C.G.S. §§ 14-208.6(4)(a), (5) (defining taking indecent liberties with children as a sexually violent offense that results in a reportable conviction); 14-208.7(a) (mandating that a resident with a reportable conviction register immediately upon release from confinement and maintain registration for at least thirty years unless successfully petitioning to shorten the period); 14-208.10 (identifying registration information regarding

---

[3] The parties stipulated to the factual averments contained within the affidavits of probable cause and Megan's Law packets. ***See*** N.T. Trial (Crenshaw), 12/2/21, at 7; N.T. Trial (McBride), 12/8/21, at 7-8. Thus, the underlying facts in these matters are undisputed.

[4] Crenshaw was not found to be a sexually violent predator ("SVP"). ***See*** Commonwealth's Exhibit 1 (Out of State Registration/Tier Form, 5/11/18).

offenders that is available for public inspection).  **See also** Commonwealth's Exhibit 1 (Out-of-State Registration Questions, 12/20/10).

Crenshaw subsequently relocated to Pennsylvania and first registered here in 2011 while housed as an inmate at the Allegheny County Jail.  **See** Commonwealth's Exhibit 1 (Pennsylvania State Police ("PSP") Megan's Law Section Offender Court Information at 6).  In 2019, the Allegheny County Sheriff's Office began investigating non-compliant sex-offenders, including Crenshaw, who last registered in 2017.  In January 2020, Crenshaw was charged for failing to register in 2018 and 2019.  Crenshaw filed an omnibus pretrial motion seeking to dismiss the charges on the basis that § 4915.2(1)(a), which criminalizes the failure to comply with Subchapter I of SORNA, did not apply to him.  The trial court denied the motion, Crenshaw elected to proceed to a trial without a jury, and the trial court found him guilty and sentenced him to two years of probation and eighteen months of electronic monitoring.  This timely appeal followed, and both Crenshaw and the trial court complied with Pa.R.A.P. 1925.

### B.    McBride

In May 2011, McBride was convicted pursuant to North Carolina's § 14-202.1(a) for taking indecent liberties with children, sentenced to nineteen to twenty-three months of imprisonment, and, like Crenshaw, required to register for a thirty-year period under the North Carolina law referenced above.  In August 2014, McBride moved to Pennsylvania and began to register as a sexual offender pursuant to Subchapter I of SORNA.  He was initially

registered at an address in Clairton, Pennsylvania, but in September 2020, deputies of the Allegheny County Sheriff's Office conducted a compliance check and discovered that McBride had vacated the property without reporting his change in circumstances to PSP.

At Case No. 7367, McBride was charged with a violation of § 4915.2(1)(a) for failing to report his change in address. Three days later, McBride was arrested in connection with this charge and incarcerated at the Allegheny County Jail. On September 23, 2020, McBride's registered address was changed to the Allegheny County Jail. He was released from confinement on the same day. On November 2, 2020, detectives of the Pittsburgh Police Department determined that McBride had not updated his residency information following his release from jail. At Case No. 8685, McBride was charged with a second violation of § 4915.2(1)(a).

His two cases were consolidated in the trial court and McBride filed an omnibus pretrial motion asserting that the charges should be dismissed because he was not subject to registration under Subchapter I. The trial court denied this motion and the case proceeded to a non-jury trial at which McBride was found guilty in both cases and sentenced to an aggregate term of one year of probation. McBride filed a timely notice of appeal in each case, and both he and the trial court complied with their respective obligations pursuant to Pa.R.A.P. 1925, and this Court consolidated the appeals *sua sponte*.

## II. Issue and Applicable Law

Appellants raise the identical issue for our consideration:

Where Subchapter I of SORNA does not apply to [Appellants']
conviction[s] from North Carolina for indecent liberties with
children because it was not "similar" under §§ 9799.55 and
9799.56 to Pennsylvania's indecent assault statute, was the trial
court required to grant [their] motion[s] to dismiss?

Put another way, where an out-of-state statute is sufficiently
different from Pennsylvania's or, at the very least, is ambiguous,
does Subchapter I **not** compel registration, particularly in light of
the rule of lenity?

McBride's brief at 5 (cleaned up, emphasis in original); Crenshaw's brief at 4.[5]

Since this is a question of statutory interpretation, our standard of
review is *de novo* and our scope of review is plenary. ***See Commonwealth
v. Finnecy***, 249 A.3d 903, 913 (Pa. 2021). "The object of all interpretation
and construction of statutes is to ascertain and effectuate the intention of the
General Assembly." 1 Pa.C.S. § 1921(a). "The plain language of the statute
is the best indicator of the legislature's intent. To ascertain the plain meaning,
we consider the operative statutory language in context and give words and
phrases their common and approved usage." ***Commonwealth v.
Chesapeake Energy Corp.***, 247 A.3d 934, 942 (Pa. 2021).

Further, we must give effect and ascribe meaning to each word and
provision chosen by our legislature, assuming none is mere surplusage. ***See***,
***e.g.***, ***Commonwealth v. McClelland***, 233 A.3d 717, 734 (Pa. 2020) ("Some

---

[5] Appellants are both represented by the Allegheny County Office of the Public
Defender and raise the same appellate issue, resulting in briefs with nearly
identical argument sections. We provide separate cites for each case where
the briefs differ. A cite without designation of an Appellant indicates that the
material is on the same page in both briefs.

meaning must be ascribed to every word in a statute . . . and there is a presumption that disfavors interpreting language as mere surplusage."); 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."). Finally, "we are to assume that the General Assembly does not intend an absurd result to flow from the construction of any statute."

***Commonwealth v. Shiffler***, 879 A.2d 185, 194 (Pa. 2005).

### A. Criminal Liability for Failure to Comply with Subchapter I's Reporting Requirements

Mindful of the above principles, we turn to the statutes at issue. The criminal statute underlying Appellants' convictions provides as follows:

> An individual who is subject to registration under [§ 55](a), (a.1) or (b) (relating to registration) or who was subject to registration under former 42 Pa.C.S. § 9793 (relating to registration of certain offenders for ten years) commits an offense if the individual knowingly fails to:
>
> > (1) register with the Pennsylvania State Police as required under § [56] (relating to registration procedures and applicability);
> >
> > (2) verify the individual's residence or be photographed as required under § [60] (relating to verification of residence); or
> >
> > (3) provide accurate information when registering under § [56] or verifying a residence under § [60].

18 Pa.C.S. § 4915.2(a).[6]

---

[6] We note § 4915.2(f) indicates that the statute applies to people who committed a § 55 offense between April 22, 1996, and December 20, 2012, and whose registration requirements had not expired. Similarly, § 52 ("Scope") provides that Subchapter I applies to individuals convicted of

*(Footnote Continued Next Page)*

Thus, in order to convict Appellants for violating § 4915.2, the Commonwealth was required to prove three elements, namely that Appellants: (1) were subject to registration under § 55[7] and (2) knowingly (3) either failed to follow a registration procedure specified in § 56 or § 60 or gave inaccurate information when they did follow the procedure. Appellants do not dispute that the Commonwealth established the second and third elements of § 4915.2(a). Their contention is that § 55 did not subject them to registration. Accordingly, we examine that provision of Subchapter I.

### B.    Subchapter I's Requirements

By way of background, Subchapter I of SORNA was enacted in 2018 to prescribe registration requirements for sexual offenders who, because they committed their offenses before December 20, 2012, could not be subject to the punitive requirements of the original version of SORNA that is now codified in Subchapter H.[8] Within Subchapter I, § 54 ("Applicability") indicates who

_____

sexually violent offenses, or those required to register with the PSP under a prior sex offender law, between those dates. Crenshaw's offense was committed in 1993 and he was convicted and sentenced in 1994. However, Crenshaw does not argue that the statutes' date parameters negated their applicability to him. Therefore, our decision is not informed by the pre-1996 date of Crenshaw's offense.

[7] Since the former sex-offender law, codified at 42 Pa.C.S. § 9793, was repealed in 2000, before either Crenshaw or McBride began residing in Pennsylvania, it cannot be the basis for the first element of § 4915.2 in these cases.

[8] **See Commonwealth v. Lacombe**, 234 A.3d 602, 628 (Pa. 2020) (Wecht, J., concurring and dissenting) (explaining that, after our High Court ruled that

*(Footnote Continued Next Page)*

must register, § 55 ("Registration") sets forth the offenses that trigger a reporting requirement, and § 56 ("Procedures and applicability") details the timing and length of registration. All three statutes contain provisions specific to individuals whose offenses were committed outside of this Commonwealth.

In particular, § 54 includes the following identification of individuals who must register:

> An individual who was convicted of an offense similar to an offense set forth in [§ 55] under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico, a foreign nation or under a former law of this Commonwealth or who was court martialed for a similar offense and who, as of February 21, 2018, has not completed registration requirements. The period of registration shall be as set forth in [§ 56](b)(4) (relating to registration procedures and applicability) less any credit for time spent on a sexual offender registry of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico, a foreign nation or with the Pennsylvania State Police prior to February 21, 2018.

42 Pa.C.S. § 9799.54(a)(4). Thus, the need for a person with an out-of-state conviction to register depends upon the similarity of the underlying offense to one enumerated in § 55. That statute provides as follows in relevant part:

> **(a) Ten-year registration**.--Except as provided under subsection (a.1) . . . , the following individuals shall be required to register with the Pennsylvania State Police for a period of 10 years:

---

retroactive application of SORNA constituted an *ex post facto* violation, the General Assembly "bifurcated SORNA within the Sentencing Code into two distinct subchapters: Subchapter H and Subchapter I. Subchapter H governs offenders whose triggering crimes were committed on or after December 20, 2012. Subchapter I applies retroactively to those whose offenses occurred before that date." (footnote omitted)).

(1)(i)(A) Individuals convicted within this Commonwealth of any of the following offenses committed on or after April 22, 1996, but before December 20, 2012:

. . . .

18 Pa.C.S. § 3126 (relating to indecent assault) where the offense is graded as a misdemeanor of the first degree or higher.

. . . .

18 Pa.C.S. § 6312 (relating to sexual abuse of children).

18 Pa.C.S. § 6318 (relating to unlawful contact with minor).

. . . .

(2) Individuals convicted of an attempt, conspiracy or solicitation to commit any of the offenses under paragraph (1)(i) or (ii)[.]

(3) Individuals who currently have a residence in this Commonwealth who have been convicted of offenses similar to the crimes cited in paragraphs (1)(i) or (ii) and (2) under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation or under a former law of this Commonwealth.

**(a.1) Exception to 10-year registration**.—[Unless a lifetime registrant as indicated in (b)[9]], an individual considered to be an offender under [§ 56](b) (relating to registration procedures and

_____

[9] Subsection (b) of § 55 describes individuals who are subject to lifetime registration, such as SVPs and people convicted of rape, aggravated indecent assault, or incest with a victim under the age of thirteen. The Commonwealth advocated neither in the trial court nor in this Court that Appellants are subject to registration pursuant to § 55(b), and we have found nothing in the certified record to suggest that Appellants are subject to lifetime registration pursuant to that subsection. Hence, we focus our analysis upon subsections (a) and (a.1).

- 10 -

applicability) shall be required to register with the Pennsylvania State Police for a period less than life, the duration of which is to be determined under [§§ 54] (relating to applicability) and [56](b).

42 Pa.C.S. § 9799.55.

Therefore, pertinent to these appeals, § 55 stipulates that people who in a different jurisdiction committed or attempted to commit offenses similar to those enumerated in § 55(a) are subject to a ten-year registration requirement unless § 56(b) classifies them as an offender with a different duration of registration.

Pursuant to § 56(b), people who live, work, or go to school in Pennsylvania must register here if they have been convicted or sentenced "for a sexually violent offense or a similar offense" in another jurisdiction or they were "required to register under a sexual offender statute in the jurisdiction where convicted[.]" 42 Pa.C.S. § 9799.56(b)(4).[10] The statute goes on to identify different subsets of such out-of-state offenders and mandates their compliance with certain portions of Subchapter I. Relevant to these appeals, § 56(b)(4)(v)[11] provides as follows:

_____

[10] Subsection (4) is the only substantive provision of § 56(b), as subsections (1) through (3) are reserved.

[11] The Commonwealth does not assert that Crenshaw or McBride falls within subsections (i) through (iv) of § 56(b)(4). Since we discern nothing in the certified records to suggest that either was designated an SVP, subject to active notification, or convicted of an offense "equivalent" to one enumerated in § 55(a) or (b), we do not discuss the specifics § 56(b)(4)(i)-(iv). As we

*(Footnote Continued Next Page)*

> [I]f the individual is subject to passive notification in the other jurisdiction or subject to passive notification by reason of court martial, the individual shall, notwithstanding [§ 53,] be considered an offender and subject to this section and [§ 60 (relating to verification of residence)[12]] and [§ 63](c)(2) [(regarding information about offenders posted on an internet website)]. The individual shall be subject to this subchapter for a period of time equal to the time for which the individual was required to register in the other jurisdiction or required to register by reason of court martial, less any credit due to the individual as a result of prior compliance with registration requirements.

42 Pa.C.S. § 9799.56(b)(4)(v).

The trigger for being considered an offender under § 56(b)(4)(v), namely the fact that the individual is subject to "passive notification" in the other jurisdiction, is defined as follows:

> Notification in accordance with [§ 63] (relating to information made available on Internet and electronic notification) or a process whereby persons, under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation, are able to access information pertaining to an individual as a result of the individual having been convicted or sentenced by a court for an offense similar to an offense listed in [§ 55] (relating to registration).

42 Pa.C.S. § 9799.53.

_____

discuss *infra*, the issue is whether Appellants' convictions were for "similar," not "equivalent," offenses to those enumerated in § 55.

[12] Pertinent to the cases *sub judice*, §§ 56 and 60 required Appellants to inform the PSP within three business days of a change in residence, employment, or enrollment as a student, and to appear annually at a PSP-approved registration site. **See** 42 Pa.C.S. §§ 9799.56(a)(2), 9799.60(b).

In sum, the import of the above statutes is as follows. If Appellants' convictions for taking indecent liberties with children are "similar to" any offenses enumerated in § 55(a)(1) or (2), then § 55(a)(3) required them to register in Pennsylvania for ten years. If the information about Appellants that was available to the public in North Carolina by the above-described passive means resulted from those "similar" convictions, then § 55(a.1) extended the duration of the registration to the thirty years imposed by North Carolina law.[13, 14] However, if taking indecent liberties with children is not "similar to" any offenses included in § 55(a)(1) or (2), then Appellants had no duty to register in Pennsylvania under § 55, and their § 4915.2 criminal convictions for failing to register are invalid. Consequently, resolution of these appeals requires us to determine whether such similarity exists.

_____

[13] **See** N.C.G.S. § 14-208.10 (identifying registration information regarding offenders that is available for public inspection).

[14] Appellants argue that the use of "is" in § 56(b)(4)(v) means that they could not be deemed offenders by virtue of that provision because they were "not subject to passive registration in North Carolina" after they left that state and began residing in Pennsylvania. **See** Crenshaw's brief at 30; McBride's brief at 31. We first note that § 56(b)(4)(v) references passive **notification**, not passive **registration**. Moreover, as the Commonwealth observes, Appellants did not raise this as a basis for dismissal in the trial court, they do not cite on appeal any provision of North Carolina law that suggests that the notification connected with their thirty-year registration ceased when they left the state, and, in any event, both Appellants still have entries on the North Carolina passive notification website on which their information is included. **See** Commonwealth's brief (Crenshaw) at 10-12 (citing https://sexoffender.ncsbi.gov); Commonwealth's brief (McBride) at 11-12 (same). Consequently, we reject Appellants' contention that their absence from North Carolina removed them from the ambit of § 56(b)(4)(v).

- 13 -

## III. Similarity of Offenses

### A. Taking Indecent Liberties with Children

The North Carolina criminal statute underlying Appellants' convictions

provides as follows:

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

(b) Taking indecent liberties with children is punishable as a Class F felony.[15]

N.C.G.S. § 14-202.1. Hence, the elements of the crime are:

(1) the defendant was at least 16 years of age, and more than five years older than the victim, (2) the victim was under 16 years of age at the time the alleged act or attempted act occurred, and (3) the defendant willfully took or attempted to take an immoral, improper, or indecent liberty with the victim for the purpose of arousing or gratifying sexual desire.

---

[15] The statute was amended in October 1994 to make taking indecent liberties a Class F felony, punishable by up to twenty years of imprisonment. **See State v. Lawrence**, 667 S.E.2d 262, 264 (N.C.App. 2008). Prior to that, subsection (b) stated: "Taking indecent liberties with children is a felony punishable by a fine, imprisonment for not more than 10 years, or both." **State v. Elam**, 273 S.E.2d 661, 664 (N.C. 1981).

***State v. McClees***, 424 S.E.2d 687, 689 (N.C.App. 1993). The disjunctive subsections of § 14-202.1(a) do not identify separate offenses, but rather "two alternative means of proving one element of the offense of indecent liberties."[16] ***State v. Jones***, 616 S.E.2d 15, 20 (N.C.App. 2005).

North Carolina courts have explained that "indecent liberties" are "such liberties as the common sense of society would regard as indecent and improper." ***State v. Every***, 578 S.E.2d 642, 647 (N.C.App. 2003) (cleaned up). "Neither a completed sex act nor an offensive touching of the victim [is] required to violate the statute." ***State v. McClary***, 679 S.E.2d 414, 418 (N.C.App. 2009). The broader protections of children contemplated by the statute criminalize such acts as having sexually explicit telephone conversations with a child while masturbating, ***see Every***, ***supra***; "photographing an unclothed child in a sexually suggestive position, masturbating in front of a child, . . . secretly videotaping a child who was undressing," ***id***. at 648 (citations omitted, collecting cases); sitting on a log twenty yards away from children on the opposite side of a creek engaging in the lewd act of masturbation and inviting the children to imitate him, ***see State v. Strickland***, 335 S.E.2d 74, 76 (N.C.App. 1985); and handing a child

---

[16] Perhaps it is for this reason that the certified copies of Appellants' convictions admitted at their respective trials did not specify a particular subsection of § 14-202.1(1)(a), but referenced § 14-202.1 generally. ***See*** Commonwealth's Exhibit 2 (Crenshaw); Commonwealth's Exhibit 2 (McBride).

"a letter containing sexually graphic language for the purpose of soliciting sexual intercourse and oral sex." **McClary**, **supra** at 418.

In short, it is not a particular set of acts the North Carolina legislature sought to criminalize with § 14-202.1, but rather the actor's purpose in seeking sexual gratification by exposing a child of fifteen or younger to lewdness and indecency:

> [T]he evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child for the purpose of arousing or gratifying sexual desire. Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.

**Jones**, **supra** at 20 (cleaned up).

## B. Indecent Assault

The Commonwealth and trial court proffered Pennsylvania's indecent assault statute as the enumerated offense to which Appellants' convictions were similar. That statute provides as follows as pertains to the issues in these appeals:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> . . . .
>
> (7) the complainant is less than 13 years of age; or

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S. § 3126(a).

Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101. Intimate parts are not solely sexual organs, but any "body part that is personal and private, and which the person ordinarily allows to be touched only by people with whom the person has a close personal relationship, and one which is commonly associated with sexual relations or intimacy." *Commonwealth v. Gamby*, 283 A.3d 298, 313–14 (Pa. 2022) (holding the neck is an intimate body part).

As indicated above, Subchapter I requires registration following conviction for committing an indecent assault, or attempting to do so, only if it is graded as a first-degree misdemeanor or higher. *See* 42 Pa.C.S. § 9799.55(a)(1)(i)(A). The grading portion of the indecent assault statute states the following:

Indecent assault shall be graded as follows:

(1) An offense under [18 Pa.C.S. § 3126](a)(1) or (8) is a misdemeanor of the second degree.

. . . .

(3) An offense under [18 Pa.C.S. § 3126](a)(7) is a misdemeanor of the first degree unless any of the following apply, in which case it is a felony of the third degree:

(i) It is a second or subsequent offense.

(ii) There has been a course of conduct of indecent assault by the person.

(iii) The indecent assault was committed by touching the complainant's sexual or intimate parts with sexual or intimate parts of the person.

(iv) The indecent assault is committed by touching the person's sexual or intimate parts with the complainant's sexual or intimate parts.

18 Pa.C.S. § 3126(b). Second-degree misdemeanors are punishable by up to two years of imprisonment. **See** 18 Pa.C.S. § 1104(2). Five years is the statutory maximum for a misdemeanor of the first degree. **See** 18 Pa.C.S. § 1104(1). A person convicted of a third-degree felony may be sentenced to up to seven years of imprisonment. **See** 18 Pa.C.S. § 1103(3).

## C.    Analysis

In determining whether taking indecent liberties with children is "similar to" § 55(a)'s enumerated offenses, we start by defining the word "similar." Nearly a century ago, our High Court examined the meaning of the word in **In re Bonsall's Estate**, 135 A. 724 (Pa. 1927), as follows:

In the New Standard Dictionary, "similar" is defined as "bearing resemblance to something else; being like in quality, nature, degree, purpose, or other characteristics, but not the same or identical." According to the Oxford Dictionary, it means "having a marked resemblance or likeness; of a like nature or kind." In Webster's International Dictionary the definition is "nearly corresponding; resembling in many respects; somewhat like; having a general likeness." . . .

Judicially, 'similar' has been defined as "nearly corresponding, resembling in many respects; somewhat alike; having a general likeness;" not "precisely alike" but "with more or less

- 18 -

> resemblance." . . . "[S]imilarity is not identity, but resemblance between different things."

*Id*. at 725 (cleaned up).[17] The meaning of the term has not changed over time. *See*, *e.g.*, https://www.merriam-webster.com/dictionary/similar (last visited May 26, 2023) (defining similar as "having characteristics in common : strictly comparable").

Also important to clarify at the outset is that, when comparing the foreign offense at issue to those in Pennsylvania's Crimes Code, "[t]he focus is not on the facts underlying the conviction, but rather on the statute that triggered the conviction." *Commonwealth v. Johnson*, 241 A.3d 398, 405 (Pa.Super. 2020) (examining whether an out-of-state conviction was equivalent to a Pennsylvania crime of violence for purposes of application of a mandatory minimum sentence). Consequently, we do not consider whether the specific conduct that resulted in Appellants' convictions would meet the elements of any of the enumerated Pennsylvania offenses. Instead, we look at the respective jurisdictions' legislative enactments to discern whether they "more or less" resemble each other, "have characteristics in common," or are

---

[17] In contrast, "equivalent," the term used in portions of § 56(b)(4) not at issue in this appeal, means "having equal or corresponding import, meaning or significance; what is virtually the same thing; identical in effect. . . . [E]qual in worth or value, force, power, defect, import and the like; alike in significance and value; of the same import or meaning." *In re Bonsall's Estate*, 135 A. 724, 725 (Pa. 1927).

"like in quality, nature, degree, purpose, or other characteristics, but not the same."

With this in mind, we turn to the trial court's ruling and the parties' arguments. The trial court held, without much elaboration, that it was "clear to the [court] that while the North Carolina offense of taking indecent liberties with a child and the Pennsylvania offense of indecent assault are not identical, they are sufficiently similar to require [Appellants] to register under SORNA Subchapter I."[18] Trial Court Opinion (McBride), 3/9/22, at 8; Trial Court Opinion (Crenshaw), 3/22/22, at 7. The Commonwealth provides additional detail to the argument for similarity as follows:

> The similarities between the two statutes are obvious. Both prohibit sexual acts in which minor children are involved. Both prohibit these acts for the purpose of arousing sexual gratification in the offender. Both prohibit this conduct being done intentionally (or, as the taking indecent liberties statute puts it, "willfully"). And both statutes are triggered when the action by the offender involves the physical touching of the victim.

Commonwealth's brief at 7.

Appellants, on the other hand, argue that both the *mens rea* and *actus reus* elements of the offenses are too different to fall within the definition of

---

[18] The trial court alternatively opined that, even if the offenses were not similar, Appellants were required to register pursuant to the reciprocity provision of § 56. *See* Trial Court Opinion (McBride), 3/9/22, at 8; Trial Court Opinion (Crenshaw), 3/22/22, at 7. As detailed above in Part II.B. of this writing, § 56(b)(4)(v)'s reference to unexpired passive notification in another jurisdiction incorporates a similarity requirement. Therefore, the trial court's alternative analysis cannot support its ruling if the offenses in question are not similar to a Subchapter I enumerated offense.

"similar." Regarding the former, Appellants contend that "only one theory of culpability for the North Carolina statute includes a mental state of arousal or sexual desire. The second theory of culpability in the North Carolina statute therefore proscribes much more conduct, as that additional specific requirement is missing." Crenshaw's brief at 17; McBride's brief at 18-19.

Appellants further assert that the offense of taking indecent liberties "encompasses much more conduct than the [indecent assault] statute." Crenshaw's brief at 18; McBride's brief at 19. They argue that the North Carolina enactment includes "many types of behavior, drawing a variety of acts within its sweep, creating a broad category of things that could be considered indecent liberties." *Id*. For example, Appellants note that indecent liberties include the non-contact offense that Pennsylvania prohibits with its indent exposure statute, 18 Pa.C.S. § 3127(a), an offense not enumerated in § 55 (a) of Subchapter I. *Id*. Appellants also observe that taking indecent liberties includes any touching "upon or with the body part or any part or member of the body" of a child, while the indecent assault statute only encompasses the touching of sexual or intimate body parts. *See* Crenshaw's brief at 18-19; McBride's brief at 19-20.

The Commonwealth counters that Appellants' "argument is overly-technical." Commonwealth's brief (Crenshaw) at 7; Commonwealth's brief (McBride) at 8. The Commonwealth maintains that "[w]hat is punishable as an indecent assault in Pennsylvania is also punishable under the same set of

facts as taking indecent liberties in North Carolina." **Id**. (cleaned up).

However, the North Carolina statute also prohibits conduct that our General

Assembly decided to proscribe in separate statutes, such as corruption of

minors.[19] **Id**. The Commonwealth argues that concluding that Appellants did

not have to register pursuant to Subchapter I just because they were

convicted under a broader statute would lead to the absurd result of requiring

neither North Carolinians who performed acts that would be considered

indecent assault nor those who engaged in the corruption of minors to register

upon relocating to Pennsylvania. **See** Commonwealth's brief (Crenshaw) at

8; Commonwealth's brief (McBride) at 9. The Commonwealth's position is

that allowing offenders to avoid registering in Pennsylvania for offenses

triggering registration in North Carolina simply because our General Assembly

opted not to combine offenses into one statute "cannot possibly have been

the intent of the legislature." **Id**.

Upon careful review of the language of the at-issue statutes, we agree

with the Commonwealth. The discrepancies between the statutes noted by

_____

[19] That statute includes the following provision concerning sexual offenses:

> Whoever, being of the age of 18 years and upwards, by any course
> of conduct in violation of Chapter 31 (relating to sexual offenses)
> corrupts or tends to corrupt the morals of any minor less than 18
> years of age, or who aids, abets, entices or encourages any such
> minor in the commission of an offense under Chapter 31 commits
> a felony of the third degree.

18 Pa.C.S. § 6301(a)(1)(ii).

- 22 -

Appellants certainly establish that they are not "equivalent" offenses. Indeed, Appellants are correct that the North Carolina statute encompasses some sexual conduct outside the scope of the definition of indecent assault that Pennsylvania criminalizes by separate statutes, such as corruption of minors, that do not trigger reporting under Subchapter I.[20]

Nevertheless, despite their differences, we are convinced that Pennsylvania's offense of indecent assault and North Carolina's offense of taking indecent liberties with children have sufficient general likeness and characteristics in common to qualify as "similar" for purposes of triggering Subchapter I's reporting requirements. Both seek to criminalize obtaining

_____

[20] We observe that some of the conduct that falls within the definition of taking indecent liberties, but does not qualify as indecent assault, is separately penalized in Pennsylvania by Subchapter-I-triggering statutes. For example, photographing a naked child for sexual gratification constitutes both taking indecent liberties and the enumerated offense of sexual abuse of children. *See Every*, *supra* at 647; 18 Pa.C.S. § 6312(b)(2), (g) (making it a crime to photograph or videotape a child under the age of eighteen engaging in a prohibited sexual act, such as nudity "depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction"). Likewise, the Pennsylvania offense of unlawful contact with a minor makes it a crime to intentionally contact a minor for the purpose of, among other things, engaging in open lewdness. *See* 18 Pa.C.S. § 6318(a)(2); Pa.C.S. § 5901 ("A person commits a misdemeanor of the third degree if he does any lewd act which he knows is likely to be observed by others who would be affronted or alarmed."). This crime "focuses on communication, **verbal or non-verbal**, and does not depend upon the timing of the communication. . . . [O]nce the communicative message is relayed to a minor, the crime of unlawful contact is complete." *Commonwealth v. Davis*, 225 A.3d 582, 587 (Pa.Super. 2019) (emphasis in original). This conduct qualifies in North Carolina as taking indecent liberties. *See*, *e.g.*, *Strickland*, *supra* at 76 (holding indecent liberty was taken when defendant masturbated in public and invited children to come imitate him).

- 23 -

sexual gratification through indecently exposing children to inappropriately intimate interaction with an older person.[21]  Both require an intentional, rather than less culpable, mental state.  Both are sexual offenses that the respective legislatures deemed worthy of a substantial term of imprisonment followed by sex offender registration and the availability to the public to access information about their whereabouts.  Moreover, a significant amount of the conduct proscribed by the broader North Carolina statute that falls outside the reach of the physical-contact-based indecent assault statute nonetheless is encompassed by other Pennsylvania offenses that trigger registration pursuant to Subchapter I.  Therefore, we hold the trial court did not err in ruling that Appellants were required to register as sexual offenders pursuant to Subchapter I of SORNA.

## IV.  Conclusion

Upon a *de novo* review of the plain language of the implicated legislative enactments, we conclude that our General Assembly intended to mandate that Appellants, by virtue of their North Carolina convictions for taking indecent liberties with children, comply with §§ 55, 56, and 60 of Subchapter I for the duration of their North Carolina registration period.  Since it is undisputed that

---

[21] Contrary to Appellants' assertion, as we indicated earlier, the North Carolina courts have made it clear that both subsections of the taking indecent liberties statute seek to prevent the "performance of any immoral, improper, or indecent act in the presence of a child for the purpose of arousing or gratifying sexual desire."  **State v. Jones**, 616 S.E.2d 15, 20 (N.C.App. 2005) (cleaned up).

they did not, they were properly convicted for violating 18 Pa.C.S. § 4915.2.

Accordingly, we affirm their judgments of sentence.

Judgments of sentence affirmed at 49 WDA 2022, 50 WDA 2022, and 46 WDA 2022.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/20/2023